Good morning, Your Honors. My name is Tom Gessell-Brock. With me today is my partner Ken Schmetterer. We represent 1350 Lakeshore Associates, the plaintiff appellant in this case. This, as I'm sure you know, is the fourth appeal in this vested rights land use case. There is only one remaining issue. Whether the circuit court erred in determining that 1350 Lakeshore Associates expenditures of $272,022.18 in reasonable reliance on the probability of obtaining a building permit consistent with the pre-existing planned development zoning entitlement was substantial. All other issues have been previously resolved in favor of 1350 Lakeshore Associates vested rights. The question now is whether the circuit court's decision adverse to 1350's vested rights was erroneous, just like the three prior adverse circuit court decisions. I'd like, in the limited time available today, to focus on three principal issues. First, the role of pre-existing vested rights precedents. Second, the place and use of materiality in determining substantiality. And third, the meaning of the nature and character of 1350 Lakeshore Associates. First, with respect to the role of the pre-existing vested rights precedents. Your Honors, in earlier appeals of this case, I argued before you that the vested rights case law established an objective standard of substantial expenditures. No Illinois case had ever held expenditures of $272,022.18 to be insubstantial. Many Illinois cases had held expenditures to be substantial for vested rights that were far less than $272,022.18. And this was true in both constant dollars and as adjusted for inflation. This Court, and then the Supreme Court, adopted a broader totality of the circumstances test to allow consideration of additional factors. So the Supreme Court adopted proportionality as one of the elements, didn't it? They did, and I will get to that in a moment, Your Honor. But my point is, is that by adopting the totality of the circumstances test, neither this Court nor the Supreme Court rejected the objective standard or the use or the comparison of the amounts paid in one particular case by comparison with what had been held substantial in previous cases. Indeed, the objective analysis continues as one of several factors the trial court is to take into account. The Cribben case specifically listed the objective amount spent as one of the factors in the totality of circumstances test. In the Cribben case, the objective amount, the amount spent was 27% of the total cost of the project. In your case, it's less than one-half of 1% of the total cost. So you lose on proportionality. I don't believe so, Judge, and I will address that in a moment. And the half of 1% is substantial? Yes, it is substantial, Judge. The arithmetic test that the circuit court attempted to apply because he failed to take into account the previous case law that had shown that the objective amount was standard was an attempt to use a straight arithmetic test. First of all, I would reject the straight arithmetic test because he suggested that Healy had approved a 2% test as this Court supposedly had found in the Casalino case. Certainly, from a review of the opinion in the Casalino case, it does not appear that this Court adopted a 2% threshold standard of substantiality. In fact, it appears to have been dicta rather than any decision, an illumination of an argument that might be made rather than any statement of position with respect to the validity of that argument. And rightly so, because if you pick a threshold, it seems perforce that you must have some basis for saying why that threshold is a threshold. Why is it that 2% makes something substantial, whereas some might argue 1.5% of 1% does not? Neither the circuit court below, the city on appeal, nor the interveners, none of them have indicated why it is. What do you think the circuit court said? Tell me what he said. I believe that what the circuit court said, that he felt that he was bound. I got what he said. I didn't even say bound. He said it's worth noting that this Court has used a $20,000 expenditure towards a $1 million project or an expenditure equal to 2% of the projected development cost as an example of an insubstantial expenditure. That's what he said. That's a test, according to you? I think he applied it as a test. It sure looks like in this case he applied it as a test because he never came up with any other reason for why it is that he concluded that 1.5% of 1% was an insubstantial amount. Well, yeah, he did. He said it's an insubstantial amount to somebody who has assets of over $25 million that you could easily afford the expenditure without damaging your financial situation. And you could spend, he went through a whole litany of things. You distributed $46 million to your partners in 2001 or 2000, I think. All of those examples which you cite, Your Honor, and which the circuit court cited, go not to the proportionality test as Your Honors indicated in the Casolino test case, which was proportionality as a percentage of total project costs. Everything that the circuit court talked about that you just mentioned relates to some kind of analysis of assets. And I want to go there in talking about the whole concept of materiality. Didn't the Supreme Court say that was one of the considerations? Nature and character is one of the considerations, although the Supreme Court did not in any greater detail indicate what it meant by that. And certainly we believe that evidence was presented showing that, in fact, with respect to those various financial factors, that 12 percent of net income, 6 percent of gross profits, 10 percent of cash flow from operations, 2 percent of total revenues, 1 percent of total depreciated assets, and 4 percent of owner's equity, that all of those percentages. I think it's depreciable assets, not depreciated. I'm sorry? I think it's depreciable assets, not depreciated. I believe the testimony was depreciated. Depreciated means they're already amortized. They're gone. Depreciable means assets to which depreciation can be used against. I'll defer to you on that one, Judge. My point is that, again, with the circuit court citing various factors, you can cite those factors, but you've got to say why it's significant. Why is it that it is significant that net income was $1.6 million? We presented evidence, undisputed, unrebutted by anyone from the city, that that was a material notion with respect to the accounting standards of materiality. You attempt to equate accounting standards for materiality with substantiality vis-à-vis the expenditures that would give rise to a vested right. Never suggested that they are equal, that they are the same. Well, then what relevance is accounting materiality? As we argued and as the trial court accepted, they are illustrative because the concepts of materiality and substantiality appear in the law to be related. Not exactly identical. I'll accept that, and I'll accept the city's analysis. When you say that the trial court accepted it, the trial court, I believe, was of marginal relevance? Right, but when I say accepted it, he allowed it into evidence. The city vociferously argued against the use of this testimony or the admissibility. The trial court rejected it. I believe that the notion, the undisputed evidence that all parties agreed to, that these were material expenditures, that had to be taken into account in determining substantiality. Now, the city suggests that there's a way to do it, that something can be material but not substantial because although they both go to fundamental fairness, they address slightly different topics. Materiality, says the city. Why does materiality, from an accounting standpoint, go to fundamental fairness? Because all it goes to, according to your witness, is the question of whether a person, a reasonable person, charged with that knowledge would find, would act adversely to the position if it was left out of the balance sheet. I think what the testimony was, Judge, was a little broader than that, and I think the characterization is a little broader than that. Both substantiality and materiality look, in common sense parlance, at whether something is big enough to matter. Big enough to matter with respect to a financial decision in the case of materiality. Big enough to provide protection under the law of vested rights in the substantial concept. Now, they're not exactly the same. The city suggests that materiality covers private interests only, and that there is a public interest that comes into the, an additional public interest to be considered. Balancing the private harm against the public benefit of enforcing a duly enacted constitutional zoning change in order to respond to the needs of its residents. And accordingly, the city concludes, a greater threshold is warranted for substantiality. And I think that's a useful approach, because the trial court here gave no reason for saying what was admittedly material was somehow insubstantial. The difference is that here, there was no duly enacted zoning change at issue when 1350 sought its Part 2 approval. In fact, in December of 1997, January, February, March, and early April of 1998, when 1350 repeatedly requested its Part 2 approval from the city of Chicago and was improperly refused, there was no new city council determination of the public health, safety, and welfare that that public balancing might somehow render material expenditures no longer substantial. So the distinction between materiality and substantiality. Hold on a second. If there had been a zoning change prior to that date, you wouldn't have gotten December 10th as the date up to which you could make the expenditures. I agree. You would have had knowledge. What's the argument? I agree. The point is, is that the city's distinction between materiality and substantiality, the only distinction offered anywhere in this case, doesn't wash. That's my point. Now, the question then becomes, Judge. What is the best case that you have standing for the proposition that in the zoning case, materiality and substantiality are synonyms? There are none. There are none, Your Honor. The only cases that we were able to find in that regard were the cases that we've cited that I think page, I can't remember, one of the pages in our open brief. The cases that happen to use the two words in the same sentence. That's right. And in doing, you know, I did a nationwide search to try to find any cases that further explain the notion of substantiality. And I couldn't find any. I tried to do a nationwide search to find a threshold for the proportionality analysis. I couldn't find any. This Court really, let me back up. I have a lot of sympathy for the trial court in this case. He was given a very difficult task by the Supreme Court, because there is simply no guidance out there as to what constitutes substantiality. There's a lot of factors to be considered. But how do you consider those factors? Should he have considered the purchase price? I'm sorry? Should he have considered the purchase price? The Supreme Court said yes, he should have considered the purchase price. Quite frankly, you know, the fact that it's, that the purchase price was less than the expenditures or if it just was for inflation. Was the purchase price made in reliance upon the zoning? No. No, clearly not. What was it, R6 at the time that it was purchased, 1952? You know, I don't know what the zoning was at the time. But it was clearly prior to the RPD 196. So you didn't buy the property in reliance upon being able to build it pursuant to RPD 196? Clearly. Clearly the case. No argument in that regard. Nevertheless, and this is kind of the problem that we're stuck with after Healy. Nevertheless, Healy says we've got to consider it. It's difficult in these circumstances to figure out how exactly these things should be considered. The trial judge's findings, evidentiary support, I mean, that's not a disputed issue in this case. The real question in this case is the application of the law. Let me go back to the question, Judge Hoffman, that you raised initially. Why is one and a half of one percent enough? Why should that be substantial? Again, there is no case law that tells us why that should be a threshold. We think the best approach was taken by the trial judge in the Cribben case, who looked and said how much could they have spent, could they have spent, given where they were in the context. I mean, you don't move forward on a Part 2 approval, or without a Part 2 approval, on even getting building plans prepared. That was the decision of this court in the Mazer-Berg case. The law doesn't require somebody to do something that's futile. The testimony was that before the whole process started, the applicant budgeted about a quarter of a million dollars to move forward to the Part 2 approval stage. That's what they spent. The city suggests, well, maybe you could have vested rights by going out and buying the property. But no one suggests that vested rights is only available to the people that buy land in Reliance. Well, in Cribben, I mean, I didn't understand your argument that you could never have vested rights if we established this proportionality. In Cribben, they spent 27 percent of the total cost before they ever got a building permit. Clearly, and in Cribben, that was a... Cribben defeats your argument. Well, I don't think so, Judge, because Cribben, again, was supposed to look at the unique facts and circumstances of each case. In Cribben, it's a small, modest development. This is not. This is a 70-plus million dollar development. Now, the simple fact that you would expend X amount of dollars through a certain point in time really has very little relationship to what the total project cost is. It's not like somebody could go out and buy the steel and the concrete beforehand. That's not this case. Our point is that the threshold percentage of substantiality is necessarily very small when you're dealing with a very expensive development. So the more expensive the development, the less money they have to spend. Is that your argument? No, not at all. Not the less money they have to spend, the less money as a percentage of the total project cost they would have to spend. That's why, indeed, I go back again... In objective dollars, Cribben spent about the same amount of money you did. He was building for $900,000. You were building for $72 million. I agree, Your Honor. My point, and I say this with all due respect, is so what? One is substantial and one isn't. But why is one substantial and one isn't? Simply saying it's a lower percentage, that begs the question. Why is it that a lower percentage is not substantial? Just because it's 27%. We don't have... No, it's not... You know, the problem is you act as if these factors to be considered under Healy are to be considered in vacuums. Is $200,000 substantial to a company that has assets in excess of $25 million? Is that a substantial amount of money? Now, your accountant would say, well, if we forgot it on our balance sheet, it would be material. Right. Because if we went for a loan and the banker found out about it, he would look at us adversely. Correct. Well, if they had a balance sheet of $200 million and you left out $200,000, would that be material? I can't do the math in my head, Judge. I think that's one-tenth of 1%, according to the testimony. No, it would not be material. So you could leave it off the balance sheet. That's correct. So the wealthier you are, an objective amount of money becomes less substantial the more money that you possess or the more income that you earn. Yeah, I think that's true. So in Kribben, we've got 27% on a project worth $900,000. We don't know from Kribben what the wealth of the builder was. Agreed. In your case, we do know. Agreed. But what you've just done is transfer two different concepts. 27% doesn't have anything to do with the financial assets of the party in Kribben. We don't know what it does. Right. 27% has to do with the proportionality. My difficulty with Kribben was I'm not sure that Kribben even applied a proportionality test. Kribben mouthed it and then did an objective test. You said $200,000. I think what they did in Kribben, Your Honor, was consider all factors as he requires us to do, which is what the trial court here did not do. How could they consider all factors when we don't even know the wealth of the builder in Kribben? We have no idea from Kribben the wealth of that builder in Kribben. This goes, Your Honor, to the question of the nature and character factor. I happen to think you're right that the nature and character factor relates to the financial assets. I also think it relates to the risk averseness. But apparently there was some suggestion by the city and by the trial court in this case that, in fact, the nature and factor relates to the fact whether somebody is a large developer or a small homeowner. Again, respectfully, and we've pointed out in a brief, Healy doesn't say that, and I don't believe Your Honor said that in Casalino. And even if they did, what does that mean? How wealthy must wealthy be? It can only be adjudged respectfully, I would suggest, by these percentages that you and I have been talking about here. In this case, there's no testimony or evidence that 1350 is a developer at all. They've never developed any property. Compare that to the extensive development experience of the plaintiffs in Kribben. In addition, we think the trial judge erred. I know I'm probably running out of time here, Judge. We think the trial judge erred by conflating the assets of the applicant, 1350 Lakeshore Associates, with those of its investors and with its affiliate, its managing agent, Draper and Kramer. There's absolutely no suggestion anywhere in the law that you can do that. The trial judge never cited a single asset of Draper in coming to his decision. He cited only assets of 1350. Agreed, but he also mentioned the fact that these are, quote, wealthy investors and came to the conclusion without any support in the testimony that the expenditure of over a quarter of a million dollars would be, I think, easily absorbed and barely noticed. There's no testimony of that whatsoever. So for these reasons, Your Honor, and I know I've probably gone over my time, if you look at the totality of the circumstances, the objective evidence test strongly supports vested rights. The proportionality test, given how much could be spent, we believe strongly supports vested rights. The nature and character, given the financial assets, we believe supports vested rights, given that it's passed all guidelines of materiality and nobody has suggested why material expenditures are not substantial. And finally, with respect to the nature and character, we've got a risk-averse, inexperienced developer never having done it before. For these reasons, we believe, Your Honor, the circuit court erred in coming to its conclusion of insubstantiality. We ask Your Honors to reverse and to remand for the issuance of the writ of mandamus. If you have no other questions? None. City? Thank you, Your Honor. Good morning, Your Honors. May it please the Court. My name is Carrie Maloney-Layton on behalf of the city. Your Honors, the circuit court faithfully applied the test announced by the Illinois Supreme Court for determining substantiality and carefully weighed the evidence in reaching its determination that 1350's expenditures were too insubstantial to qualify for a vested right. That determination was not against the manifest weight of the evidence and this Court should accordingly affirm the judgment. This morning, I intend to address the three explicit factors that this Healy Court set forth for determining substantiality, proportionality, nature and character, cost of the property, and then turn to the factors 1350 would like to add in to the test. First, with respect to proportionality. This factor is relevant because it informs us how far along the property is toward completion. The evidence here showed 1350 had spent less than one-half of one percent of the total projected cost of the development, which was $72 million. The circuit court correctly calculated that percentage and correctly concluded on that basis that 1350 was not very far along toward completing the project when the zoning changed. As a result, that weighed strongly against finding that substantiality threshold had been crossed. 1350 would like the test to be, did it spend as much as it could have at that particular stage of the project? However, and also adds that no developer in the future will be able to get a vested right at the Part 2 stage because the amount of the total cost of the development is too great. But that leaves us out, the fact that it is not relevant, according to Healy, what might happen in a future case. And that is no reason to undermine the circuit court's conclusion that in this particular case, the project was not far enough along to qualify for a vested right. How does the Supreme Court define substantiality? It defines substantiality through a list of factors, three of which are explicit, and then add in that there are maybe other factors that are not apparent to the court at this point. Those are the factors for determining substantiality. How does the Supreme Court define substantiality? Well, substantiality is, the question, what we're seeking to answer is whether the property owner has made a meaningful change of position, a significant change of position, such that it would be unfair to, usually the municipality is free to change the zoning in order to address the needs of the community, so that's the typical presumption. This is an exception to that for developments that have gone far enough along where there's been a significant, a substantial, a meaningful change in position on behalf of the property owner such that it would no longer be fair to allow the zoning to change at the last minute. Well, how does one change position according to the Supreme Court? According to the Supreme Court, one changes position by making expenditures. So it doesn't make any difference how far along you are. It's just a matter of. It's a question of, according to the Supreme Court, have you made a substantial expenditure or incurred substantial obligations in good faith reliance upon the probability of the issuance of building permits under an existing zoning regulation? And the whole purpose of the exception, I think, is to mitigate the unfairness caused by the change in zoning after you've made this substantial. So how far along are you relevant? So the question is, is it a substantial change? Have you spent a lot of money? Have you incurred? And what is a lot of money? Now Haley gives you the test to determine that. Right. A lot of money towards completing a $72 million project is not one half of one percent. So I agree with that, Your Honor. And there certainly do not have to be any particular number of vested rights granted in the future for the world to operate fairly. If it turns out that future developers at the Part 2 stage are not able to spend enough to substantially change their position in a way meaningful to their own financial pictures, well, that just means they're not entitled to a vested right as the Supreme Court has defined it. Because by definition, they haven't changed their position enough to earn it. The next factor that the Court has set forth is the nature and character factor. And that is useful to put into perspective the dollar amount that is spent. Because as this Court noted in Castellino, and as the Supreme Court has explained, just examining the dollar amounts in the vacuum doesn't tell us whether the amount spent is meaningful to the particular property owner who is making the expenditure. And again, the point is to determine whether there's been a meaningful change of position for that individual. As this Court used the example in Castellino of the $20,000 expenditure by a homeowner being quite different from $20,000 by a multimillion dollar real estate partnership. 1350 claims that this test is unfair to large developers, but really it's the same test for everyone, no matter whether individual or large homeowner, because each property owner has to spend an amount that's significant to their financial pictures before they earn a vested right. So although the dollar amount for the individual homeowner will be smaller than the dollar amount to be substantial to the large developer, there still has to cross that threshold of being meaningful to that particular property owner. No court, this Court, the Circuit Court, or the Supreme Court, has defined the nature and character factor the way 1350 tries to urge, which is how much experience the real estate developer has, or how the developer feels about spending money before the decision is made to go forward with the project. 1350 claims it's an inexperienced developer because the partnership form of its company never developed property before, despite the fact that as a corporation it, of course, did develop property. Even if it is an inexperienced developer, that should not entitle it to a vested right for an amount that is insignificant to its financial picture. And whether the developer is frugal, risk-adverse, penny-pinching, so forth, that is irrelevant because that looks at the wrong point in time. It looks at how the developer feels about spending money on a project before the decision is made to go forward with the project. Perhaps 1350 was reluctant to embark on the project, but ultimately it decided to go forward with a $72 million project. Once the decision is made, the question becomes, did they spend enough to be meaningful to them, to their financial picture? Did they spend an amount that was significant? Not whether they felt uncomfortable spending that amount. If the tests were as 1350 urges, then it could be subject to manipulation and self-serving testimony as the circuit court recognized. 1350 claims to be frugal and penny-pinching for the reasons that just because it is a fiduciary and it owes duties to its investors to not spend their money freely and to not make investments that don't potentially have return. Well, in the future, every developer is going to claim that accurately and not be testifying untruthfully. That's just the nature of having a fiduciary duty. But that doesn't mean that the expenditure that gets made is so significant that it represents a substantial change of position. Well, I mean, the significant test of $272,000, I mean, nobody throws away $272,000. But $272,000 isn't necessarily significant to everyone. That's correct, Your Honor. That's correct. So now the question becomes, who are we talking about to determine whether it is or is not a significant amount of money? That's correct, Your Honor. So you have to look to the wealth, I suppose, of the person spending the money. Right. Otherwise, there's no context for the number. It's just a number in a vacuum. And if the tests were about frugality or risk-adverseness, also it would lead to potentially the absurd result that an individual homeowner who is comfortable spending money, has a number of cars, likes to take vacations, would have to deplete their entire bank account because they feel comfortable spending money before they qualify for a vested right, whereas a large multimillion-dollar real estate partnership would have to spend just an insignificant amount to its financial picture and yet qualify for a vested right. The cost of the property is the third explicit factor. The circuit court appropriately gave that no significance in this case because the property was not purchased in reliance on the zoning. It was purchased 25 years before the zoning came into existence. And comparing the amount of the expenditures to the 1952 purchase price doesn't tell us anything about whether there's been a substantial change in position for 1350. 1350, finally, there are certain factors that 1350 would like to add in to the totality of the circumstances test here, but the circuit court appropriately declined and gave them no weight, first, or little weight. First, materiality. Materiality is a concept that is quite different from substantiality. It's an accounting term, and it is a test for what is the minimum threshold for including something on a balance sheet, what could conceivably be relevant to a stakeholder, an investor, someone making a decision about the company. But it does not necessarily follow that because it crosses that minimum threshold, so it counts as material, that it also represents such a substantial change in position that the expenditure should qualify for vested rights. So the circuit court, therefore, correctly held that it was marginally relevant, but not persuasive in this case. And even if that factor should have been considered more strongly, it does not explain why the circuit court's weighing of the totality of the circumstances should change. 1350 focuses on, it wants a bright line test. If it's material, therefore it must be substantial, but that discounts what Healy said, which is to consider the totality of the circumstances. Finally, with respect to past cases, 1350 again urges this court that it should compare the amount spent here to the amount spent by developers in cases decided 20 to 50 years ago, which were decided by definition before the Healy case, and therefore did not consider the factors that the Supreme Court announced in Healy. And in many cases, we simply do not know anything about the developers, the size of the project, or their financial pictures in order to draw comparisons or conclusions. Healy instructs the court to look at the unique facts of this case and to weigh the totality of the circumstances in reaching a conclusion about whether something is substantial. The circuit court appropriately did that in this case, and this court should respect that weighing of the evidence. The circuit court faithfully applied the Healy factors, it properly discounted the factors that are relevant in this case, and it reached the correct result. Unless there are further questions, we respectfully request this court to affirm the circuit court's judgment, and I would cede the remainder of my time to Mr. Hedlund. Mr. Hedlund. Good morning, Your Honors. My name is Reuben Hedlund, and I represent the intervenors in this case, and may it please the court. As this court is undoubtedly aware, the Supreme Court upheld all of this court's determinations of law, save one, the date on which 1350 could no longer rely in good faith on the probability of obtaining a permit. And because the concept of substantiality is fact-based, the Supreme Court returned it to the lower courts, to the ultimate lead of the trial court, for the factual determination of whether the amounts expended by 1350 Lakeshore Associates in this case were sufficiently substantial as to afford them a vested right. Now, Judge Palmer, we submit, in the trial below, followed these determinations of the law to the letter. The trial court considered all of the evidence of factual circumstances offered by the parties, overruling any objection by the opposing parties. And indeed, with respect to materiality, or the evidence on materiality as an accounting concept, Judge Palmer said, it's relevant, but not persuasive. And that is the quintessential function of a trier of fact in a bench trial, as in this case. We respectfully submit that it cannot be reasonably argued that the trial court did not consider the totality of circumstances as directed by the decisions in this case by this court, as well as the Supreme Court. Now, 1350 says time and time again that the trial court drew lines in the sand, equivalent to a bright-line rule. No, it didn't, as we suggest a careful reading of Judge Palmer's decision makes clear. Now, because vested rights are based upon equitable principles, each case is necessarily unique. The trier of fact or the appellate court, neither one of them are under any obligation to analyze and distinguish the totality of circumstances of every similar case that precedes the one at bar. In sum, Your Honors, 1350 failed to carry its burden of proof, and given the totality of circumstances and evidence considered by the trial court, its decision was clearly not against the manifest weight of the evidence, such that an opposite conclusion is clearly evident, or the factual findings on which it is based are unreasonable, arbitrary, or not based on the evidence, to quote this court's standard of review pronouncement. Finally, Your Honors, we suggest that under any rational and objective analysis basis, the result below could not be deemed unfair or unjust. On that, we rest our case and ask this court to affirm the decision below. If there are any questions, I'd be happy to answer them. Thank you. Mr. Hedlund. Counsel, may I ask you a question based on what Mr. Hedlund just said? Yes, ma'am. What is our standard of review? Standard of review here is multifaceted. I wish I could give you a clean, concise answer, but I don't think I can. You say de novo. In your reply brief, you say de novo. Yes and no. I want to be very clear. With respect to the question of evidentiary issues, whether there was sufficient evidentiary support, for example, Judge Palmer said the total amount of expenditures is $272,022.18. Hey, that's manifest weight of the evidence. We all know that. With respect to the various percentages that I quoted earlier, percentages of the financial positions, that's manifest weight of the evidence. That's kind of basic stuff. However, in the application of the law to determine substantiality, a mixed question of law and fact, that's where I think we've got de novo review. And in this regard, I'm relying primarily on the Cribben case for what the city argued, and I agree with the city's argument in Cribben in that regard. Mixed question of law and fact doesn't carry a de novo standard of review. It carries with it clearly erroneous. I understand you. I have never figured out what the difference between clearly erroneous is and against the manifest weight of the evidence. But I'll leave that to another day. I'm not sure. What I think is important. It's not de novo. I mean, that's the key. It's not de novo. It's not de novo. Well, I think with respect to the application of the law to the determination of substantiality, yeah, I think it is de novo. I think that's what Cribben says. I think that's what the city argued in Cribben, and that's what the court accepted in Cribben. But here's the problem in this case, Your Honors, and counsel's arguments is, I think, very illustrative of this. It all comes down, it looks like, to various thresholds, okay? We know objectively what the amount of the expenditures were. We can compare them to other cases. We know where that falls. Well, why do we compare them to other cases to begin with? Healy says so. Healy says that the objective amount is not the only factor to be considered, but it is to be considered with the others. And that's what they did in Cribben. Compared to other cases? Well, that's what they did in Cribben, Your Honor. Healy is oblique in that regard. It doesn't say that. Cribben wasn't us. It was somebody else. So let's talk about what Healy said and how you apply Healy. Healy, we have to apply Cribben. We don't. Now, Cribben, we can look at, and we can say a few things about Cribben, that there was a 27% expenditure that was found to be. But we don't have to apply Cribben. We have to apply Healy. My understanding was always that when there's only one case in the appellate court on the point, all the panels are bound by it. But I defer to your judgment. Well, my judgment would never change. I defer to your judgment in that regard. We'd still be back at, I mean, I don't know. We changed the law on proportionality, Your Honor. Yeah, I know I did. But the fact of the matter is, you know, look, these cases that you talk about for comparison, no proportionality was done in any of those cases. It was just an objective amount of money, and the court said, that's a lot of money. Right. And so we're going to give you a vested right. Right. And it was kind of like, it's a lot of money if I think it's a lot of money. So if each one is an Ipsy Dixit, why is it a lot of money? They're not Ipsy Dixit, Your Honor. Objectively, $200,000 is a lot of money. No, no, no. It's the flaw of the common law in determining what is a substantial amount of money for purposes of vested rights. I don't want to get hung up in suggesting that this is the only standard. But it is useful in this case. If, for example, the amount of money fell. The point that Justice Price asked you a question, and it's an extremely important question. I agree. Because let's assume that these decisions might go this way or they might go that way. In order to win this case, you have to show that an opposite conclusion to that which was reached by Judge Palmer is clearly apparent. Agreed. Why is it clearly apparent? Because there's no testimony whatsoever, no evidence on which to base a finding that the amount of $272,000 is insubstantial. Of course there is. There's all sorts of testimony about the wealth of your client, how much money they have, could they absorb an expenditure of $200,000-plus without feeling it. But, Your Honor, if I could, I don't mean to interrupt you. That evidence is out there. But there is no evidence that would convert the expenditures versus the owner's equity into a number, a threshold, as counsel indicated, that somehow or another is insubstantial. In other words, you've got this. You've got to figure out where the threshold is. Counsel for the city argued both with respect to the total project cost and to the applicant's wealth that the evidence here did not meet the threshold. What's the threshold? And how is the threshold determined? We offered evidence suggesting that the notion that the thresholds established through accounting principles on the doctrine of materiality will be a way to measure it. There is no evidence whatsoever of any other way to measure a significant threshold. I respectfully suggest, contrary to Mr. Hedlund, that we did, therefore, fulfill our burden of proof and that the trial judge, by simply making what is respectfully a naked conclusion that, well, most people could absorb this without really saying why. I mean, he thinks he could absorb it. Why does he think he could absorb it? Isn't that what trial courts do all the time? Isn't that what trial courts do every single day? Yeah, but they based it on something. Evidence. There was a trial. Testify. There was a trial, but where was the evidence, Your Honor? And, again, I'm not trying to be disrespectful. Where was the evidence that that amount of $272,000 could be easily absorbed and would be barely noticed? I mean, those are his findings. Is that supported by the manifest weight of the evidence? If so, I would challenge the city and the interveners to show me the evidence that supports that. Well, the evidence was that LSA's depreciable assets totaled more than $25 million in 1996, more than $26 million in 1997, that they had a net income of $1.9 million in 1996, $2.2 million in 1997, and that even executives from Draper and Kramer testified that they had significant assets such that financing of the construction would not have been difficult, and they had four general partners, more than 100 limited partners, all of whom were considered to be wealthy individuals. There we go again. According to your client. There we go again, Judge, going into what we would consider to be irrelevant testimony. Why is that irrelevant? The question of whether $200,000 is a substantial amount of money or not. Judge, if it was a corporate applicant, would you be inquiring into the personal assets of its shareholders? But it's not. What difference does that make? It's a partnership. So what difference does that make with respect to the partnership assets? Well, generally it makes a big difference to determine what's available for expenditures and available for the paying of debts. Paying of debts, perhaps. This isn't a debt payment case. This is a cash payment case. In fact, the evidence was 12 percent of annual net income was expended. My point again, Judge. Go ahead. In the years 2000 and 2001, you distributed $46 million to your partners. Again, evidence with the trial judge ruled inadmissible, but then later came back to, you know. I don't think that's quite true. He ruled inadmissible the statements for the years up to 2006. He admitted for another purpose the statements relating to 2000 and 2001. You make the argument in your brief that he considered it wasn't a record. That is just simply wrong. He admitted it. It was admitted already. What he didn't admit was the 01 to 06 statements, and he never relied on them. Again, I'm going to have to disagree with you, Judge, and respectfully, but again, assume for a moment that all that is correct. Of what relevance is something that happens three years later to determine the substantiality? You know, I go out and I expend a lot of money, 90 percent of my income, and three years later I hit the lottery. Does that suddenly make my rights no longer vested? Respectfully, I disagree. The significant issue in this case, again, goes to the determination of what these thresholds are. I had great hopes in light of the way the law of vested rights has evolved over the last decade, in part because of this case, that Judge Palmer's decision would tell us something about thresholds, would tell us what is the threshold for proportionality. Is it 2 percent? Is it 1.5 percent? That's not what trial courts do. That's not what the Healy court told the trial court to do. There are factors. Judges hear evidence, they apply factors. But they can't just throw things into a pot and come out the other side. They've got to be reviewed, Your Honor. And that's what we're doing. Believe me, we're reviewing. That is how the litigation happens. Judges apply the law to the facts. How hard is that? But look, Judge, you don't just say, well, it's a trial court's determination. He heard the evidence. She heard the evidence. We're going to support it. No, we apply a standard of review. That was my question. That's why I'm engaging with you. And that's what we do. We apply the standard of review. You say it's de novo and you're brief, and that's why I raised this issue, because it cannot be that. Let's assume it's clearly erroneous. Let's assume it's manifest way to the evidence. So then we look and we say, is there evidence to support these findings? And as Judge Hoffman cites, there's a lot of evidence in the record with respect to the relative wealth of 1350 and with respect to the total cost of the project. But what is utterly lacking in the record, and I think this goes to a question that you asked, Judge Hoffman, is what is the significant threshold? What difference does it make that 1350 had annual income of $1.6 million? You know, if I had to spend 12% of my income, that's significant to me. That's substantial to me. Maybe it's not to Mr. Gates or Rockefeller. But what is missing in the trial court's analysis is any threshold and any evidence supporting a threshold. You wanted him to come and say 2%, bright line room, 2%, 1%, whatever, some number. He said he was required by the Supreme Court to do that. I think he was required if he was going to find an amount that through all the history of vested rights would otherwise be determined to be substantial. We start with that. Then if he's going to find it insubstantial because it is such a small percentage of the total project cost  that he's got to tell us what is the threshold that renders something that would otherwise have been substantial now insubstantial. Why does he have to tell you that? Because I don't think Healy allows him to just, him or her, whatever, to just say, well, I'm going to throw this all in the pot and I'm just going to come to a decision. Well, I think it's one thing for a person to say an expenditure of $200,000 is not substantial to a company that has $25 million in assets. That's one thing. But you're suggesting in order for him to say that, he's got to tell you where the threshold of substantiality is. He doesn't have to tell you what his reasoning is. So he has to lose the rule. But he's got to have a good reason. He can't just rule. He did. He said $200,000 is not substantial to somebody with $25 million. And my response, Your Honor, and again respectfully, is why not? Where does it say that it's not? You know, I was thinking when I was at council table. We talk about one-half of one percent. I mean, there's a standard in the law that we all know that's a heck of a lot smaller than that. It's one-tenth of one percent. That's the blood alcohol limit for drunk driving. Now, that comes from the legislature. Okay, that's where that comes from. But we know why that is a significant threshold because somebody that's got the authority to make that decision has made it. What is there about one-half of one percent or two percent or 12 percent of net income that makes it insubstantial? That's what's missing in this case. We tried to prove it. We offered evidence to prove it. The judge didn't like it. Okay, he didn't like it. Then what else is there to make what would otherwise pre-Healy, and Healy only expanded the analysis.  Pre-Healy, it's substantial. No question about it. Why is it now insubstantial? That is where I believe the trial court erred as a matter of law. Or, Your Honor, if you believe the standard is clear, I think it's clearly erroneous because there's simply nothing in the record to support this conclusion by the trial court. I've taken way too much time. I thank you for that time. Thank you, Your Honors. If you have no other questions, we respectfully ask that the judgment be reversed and remanded. Counsel, thank you. The case will be taken under advisement. Court is adjourned.